No. 25-1222

# United States Court of Appeals for the First Circuit

---

KPM ANALYTICS NORTH AMERICA CORPORATION,
Plaintiff - Appellee,

v.

BLUE SUN SCIENTIFIC, LLC;
THE INNOVATIVE TECHNOLOGIES GROUP & CO., LTD.,
Defendants - Appellants,

ARNOLD EILERT; ROBERT GAJEWSKI; RACHAEL GLENISTER;
GREGORY ISRAELSON; IRVIN LUCAS; PHILIP OSSOWSKII;
MICHELLE GAJEWSKI,
Defendants.

---

ON APPEAL FROM A JUDGMENT OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS
CASE NO. 4:21-CV-10572-MRG

## DEFENDANTS - APPELLANTS' REPLY BRIEF

Christopher A. Duggan (18241)
Dana A. Zakarian (63652)
Patricia A. Hartnett (48631)
Christopher J. Hurst (1188843)
SMITH DUGGAN CORNELL & GOLLUB LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel: 617-228-4416
chris.duggan@smithduggan.com
dana.zakarian@smithduggan.com
phartnett@smithduggan.com
churst@smithduggan.com

Attorneys for Defendants-Appellants
Dated: February 27, 2026

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES .....................................................................iii

INTRODUCTION..................................................................................... 1

    I.    Defendants Did Not "Waive" Personal Jurisdiction.............. 2

    II.    KPM Fails to Meet its Burden to Present *Prima Facie* Evidence that the Defendants Committed an "Act or Omission" in the Commonwealth to Satisfy the Long-Arm Statute............................................................................... 6

    III.    KPM Cannot Establish Personal Jurisdiction Over ITG By Arguing "Agency" or "Ratification" .................................. 8

    IV.    KPM Fares No Better Under the Due Process Clause........ 11

            A.    *KPM Has Not Identified a Single Blue Sun or ITG Contact with Massachusetts* ................................ 11

            B.    *KPM's Relatedness and Purposeful Availment Arguments Fail as a Matter of Law* ........................... 16

    V.    Defendants' "Unfair and Deceptive" Conduct Did *Not* Occur Primarily and Substantially in Massachusetts........ 18

    VI.    MUTSA Supersedes KPM's Chapter 93A Claim Because It Is Based on the Theft of Trade Secrets ............. 20

    VII.    The Court Should Strike the Lower Court's Malice Finding ................................................................................ 25

    VIII.  The District Court's Erroneous "Head Start" Instruction............................................................................ 27

i

IX.   The District Court Improperly Altered the Elements of
      a Tortious Interference Claim by Erroneously
      Instructing the Jury on Willful Blindness............................28

CONCLUSION .................................................................30

CERTIFICATE OF COMPLIANCE.......................................32

CERTIFICATE OF SERVICE..............................................33

# <u>TABLE OF AUTHORITIES</u>

CASES:

AcryliCon USA, LLC v. Silikal GmbH,
    985 F.3d 1350 (11th Cir. 2021) ................................................................6

Astro-Med, Inc. v. Nihon Kohden America, Inc.,
    591 F.3d 1 (2009) ....................................................................... 4, 5, 17

BioPoint, Inc. v. Dickhaut,
    110 F.4th 337 (1st Cir. 2024) ..............................................................27

Boit v. Gar-Tec Products, Inc.,
    967 F.2d 671 (1st Cir. 1992) ....................................................... 5, 6, 12

Cabot Corp. v. Baddour,
    394 Mass. 720 (1985) ...........................................................................24

Captivate LLC v. Datalock Systems, Inc.,
    2019 WL 7707968 (Mass. Super. Dec. 10, 2019) ..................................8

Custom Conveyor Corp. v. Hyde,
    237 F. Supp. 3d 895 (D. Minn. 2017)...................................................16

Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.,
    290 F.3d 42 (2002) ..................................................................... 9, 10, 11

Doane v. Python Leads, LLC,
    1:24-CV-12947-JEK, 2025 WL 3485569 (D. Mass. Dec. 4, 2025) ..........7

English v. General Electric Company,
    496 U.S. 72 (1990).................................................................................24

Fishman Transducers, Inc. v. Paul,
    684 F.3d 187 (1st Cir. 2012) ................................................................18

Graduation Sols., LLC v. Loukaides,
  No. 20-1384-CV, 2021 WL 5499462 (2d. Cir. Nov. 24, 2021)............3, 4

Harlow v. Children's Hospital,
  432 F.3d 50 (1st Cir. 2005) ...................................................................10

Hewes v. Pangburn,
  162 F.4th 177 (1st Cir. 2025).................................................................11

Insulet Corp. v. EO Flow Co., Ltd.,
  779 F. Supp. 3d 124 (D. Mass. 2025)....................................................26

International Floor Crafts, Inc. v. Dziemit,
  420 Fed. App'x 6 (1st Cir. 2011) .......................................................28-29

Jet Spray Cooler, Inc. v. Crampton,
  377 Mass. 159 (1979) ............................................................................27

Keane v. Expeditors Int'l of Washington, Inc.,
  138 F.4th 613 (1st Cir. 2025)...................................................................9

LaValle v. Parrot-Ice Drink Prods. of Am., Inc.,
  193 F. Supp. 2d 296 (D. Mass. 2002)....................................................7-8

M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.,
  No. SACV 19-220 JVS (JDEX), 2019 WL 6655274
  (C.D. Cal. Sept. 23, 2019) ......................................................................16

Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc.,
  412 F.3d 215 (1st Cir. 2005) ..................................................................24

N. Laminate Sales, Inc. v. Davis,
  403 F.3d 14 (1st Cir. 2005) ................................................................4, 5

Nandjou v. Marriott Int'l, Inc.,
  985 F.3d 135 (1st Cir. 2021) ............................................................10, 11

iv

Neural Magic, Inc. v. Facebook, Inc., 1:20-CV-10444-DJC,
  2020 WL 13538617 (D. Mass. Oct. 29, 2020) ...............................20, 25

Neural Magic, Inc. v. Meta Platforms, Inc.,
  659 F. Supp. 3d 138 (D. Mass. 2023)....................................................18

New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc.,
  537 F.3d 35 (1st Cir. 2008) ...................................................................3

Peterson v. Highland Music, Inc.,
  140 F.3d 1313 (9th Cir. 1998).......................................................2, 3, 4

Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate,
  Inc., 208 F.3d 210 (Table), 2000 WL 248170 (4th Cir. 2000)..............29

Roche v. Royal Bank of Canada,
  109 F.3d 820 (1st Cir. 1997) ................................................................18

S & D Trading Acad., LLC v. AAFIS, Inc.,
  494 F. Supp. 2d 558 (S.D.Tex.2007) ....................................................16

Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.,
  895 F.3d 1304 (Fed. Cir. 2018) ...........................................................27

The Scuderi Group, LLC v. LGD Technology, LLC,
  575 F. Supp. 2d 312 (D. Mass. 2008)....................................................8

Uncle Henry's Inc. v. Plaut Construction Co.,
  399 F.3d 33 (1st Cir. 2005) ..................................................................19

United States v. Bestfoods,
  524 U.S. 51 (1998)..................................................................................9

Walden v. Fiore,
  571 U.S. 277 (2014)................................................................12, 13, 16

Zemvar Inc. d/b/a/ Grip Mobility Co. v. Ubert Technologies, Inc.,
  No. 2484CV01525-BLS, S2, 2025 WL 354890 (Mass. Super. Jan. 2025)
  ......................................................................................21, 25

**STATUTES:**

G. L. c. 93 §42(B) ....................................................................25
G. L. c. 93 §42F(a) ..................................................................20
G. L. c. 93 §42G .....................................................................24
G. L. c. 223A § 3(c)................................................................7, 8

**RULES:**

Fed. R. Civ. P. 12..............................................................2, 5, 30

**OTHER AUTHORITIES:**

St. 1987, c. 664, § 3................................................................24

# **INTRODUCTION**

This appeal concerns whether Massachusetts courts may assert personal jurisdiction over two out-of-state companies based solely on conduct that occurred outside the Commonwealth. Indeed, KPM does not identify a single Massachusetts-based act by either Defendant. Instead, KPM relies on its own forum contacts, mischaracterizations of the record, and newly minted agency and ratification theories that were waived long ago. But it is well settled that jurisdiction must rest on the Defendants' in-forum conduct—not KPM's residence. And the *prima facie* record is insufficient to establish personal jurisdiction.

Contrary to KPM's assertion, Defendants did not "waive" this issue. To the contrary, Defendants moved to dismiss for lack of personal jurisdiction, thereby preserving appellate review of whether the *prima facie* record was sufficient to confer jurisdiction.

For these reasons stated in Defendants' principal brief and below, the Court should vacate the judgment entirely, or, at minimum, remand for a new trial.

## I.    Defendants Did Not "Waive" Personal Jurisdiction

KPM incorrectly claims that Defendants "waived or forfeited" their personal jurisdiction defense by failing to renew it after its motion to dismiss was denied. To the contrary, Rule 12 provides that personal jurisdiction defenses are waived *unless* they are raised in a motion to dismiss *or* a responsive pleading. Fed. R. Civ. P. 12(h)(1). The "negative converse" of this rule is that moving to dismiss for lack of personal jurisdiction preserves the issue for appeal. Peterson v. Highland Music, Inc., 140 F.3d 1313, 1318 (9th Cir. 1998).

Circuits addressing this issue have uniformly held that moving to dismiss preserves the issue for appeal. But when jurisdiction is *only* challenged at the pleading stage, appellate review is limited to whether the evidence presented satisfied the *prima facie* standard. Stated differently, the appeal reviews *de novo* the district court's decision denying the motion to dismiss.

In Peterson, the defendant moved to dismiss for lack of personal jurisdiction but did not renew the issue at any other stage of the case (*e.g.,* summary judgment, trial, or post-trial). 140 F.3d at 1318. Guided by decisions in other circuits, the Ninth Circuit held that in "absence of

other factors militating in favor of a finding of waiver," filing a motion to dismiss "suffices to preserve the issue of personal jurisdiction for appeal." Id. at 1319.[1]  The Ninth Circuit then reviewed whether the *prima facie* standard was met. Id.

Similarly, in Graduation Sols., LLC v. Loukaides, defendant did not renew its personal jurisdiction defense after its motion to dismiss was denied. No. 20-1384-CV, 2021 WL 5499462 (2d. Cir. Nov. 24, 2021). The Second Circuit held that the defendant forfeited its right to an evidentiary hearing on the jurisdictional issue but preserved its right to appellate review under the *prima facie* evidence standard. Id.

Although this Court has not squarely addressed this waiver issue, it found the Peterson case instructive in New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc., 537 F.3d 35, 54 (1st Cir. 2008) (quoting Peterson, 140 F.3d at 1318 (9th Cir.1998) ("finding that defendants did not waive on appeal its defense of lack of personal jurisdiction when, in the absence of any allegations of 'deliberate,

---

[1] KPM does not argue any factors in support of waiver, and such, has waived any other waiver argument.

strategic behavior,' defendants contested jurisdiction only in their initial pleading and did not raise the issue again until appeal")).

This Court has followed the approach of the other circuits in Peterson and Graduation Sols., LLC. See N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 23 (1st Cir. 2005). In Laminate, the district court denied the defendants' motion to dismiss based on the *prima facie* evidence. Following trial, the defendant moved to revisit the jurisdictional issue but did not argue why the jurisdictional facts had changed in view of the trial evidence. The district court treated the motion like a motion for reconsideration of the *prima facie* ruling and denied it. This Court held that the appropriate standard of review on appeal was *de novo* review of the district court's *prima facie* ruling. Id.

Similarly, in Astro-Med, Inc. v. Nihon Kohden America, Inc., this Court reviewed *de novo* the denial of a motion to dismiss for lack of personal jurisdiction following a trial and final judgment. 591 F.3d 1, 8 (2009) ("Where, as here, the district court employed the prima facie standard, we review 'both the district court's decision to use the prima facie standard and its conclusion under that standard *de novo*.'").

KPM does not cite a single case holding that a party waives the right to appeal the denial of its motion to dismiss by not seeking an evidentiary hearing during or after trial. Instead, KPM bases its entire argument on a misreading of this Court's decision in Boit v. Gar-Tec Products, Inc., 967 F.2d 671, 678 (1st Cir. 1992). In Boit, this Court stated (in dicta) that if a court "applies the *prima facie* standard and denies the motion to dismiss, it is implicitly, if not explicitly, ordering 'that hearing and determination [of the motion to dismiss] be deferred until the trial.'" Id. quoting Fed. R. Civ. P. 12(d). Plaintiff incorrectly claims that the "logic" of Boit mandates a finding of waiver where a defendant does not renew its challenge to jurisdiction at trial. Boit, however, did not even involve a claim of waiver. Rather, the Court merely described the three evidentiary options under which courts analyze jurisdictional challenges. Boit also predates this Court's decisions in Laminate and Astro-Med—which, as described above, both applied *de novo* review under the *prima facie* standard.

In short, <u>Boit</u> does not support KPM's position, and Defendants

preserved their appeal of the district court's jurisdictional ruling.[2]

## II.   KPM Fails to Meet its Burden to Present *Prima Facie* Evidence that the Defendants Committed an "Act or Omission" in the Commonwealth to Satisfy the Long-Arm Statute

The *prima facie* evidence at the motion to dismiss consisted of: (1)

KPM's Verified Complaint and exhibits thereto; and (2) the Affidavit of

Robert Wilt on behalf of ITG. RA 46-260; RA 284-287. In their lead

brief, Defendants demonstrated that KPM's claims are based on

conduct that occurred in California, Illinois, and Maryland—outside of

Massachusetts. The only connection to Massachusetts is that KPM

resides in the Commonwealth (and, as such, claims to have suffered

---

[2] KPM's other case also is inapposite. <u>AcryliCon USA, LLC v. Silikal GmbH</u>, 985 F.3d 1350, 1365–66 (11th Cir. 2021). There, the district court denied a motion to dismiss under the *prima facie* standard and explicitly deferred until trial an evidentiary ruling based on the preponderance of the evidence. The defendant renewed the issue at trial, and the court denied the motion after making evidentiary findings. Defendant appealed the denial of the motion to dismiss, rather than the later post-trial ruling. The Eleventh Circuit held that the evidentiary ruling supplanted the earlier *prima facie* ruling. <u>Id.</u> at 1365–66. And because defendant only appealed the supplanted decision, it waived appeal of the controlling evidentiary finding.

harm there). As a matter of law, this *prima facie* evidence is insufficient to satisfy G. L. c. 223A § 3(c).

KPM argues that "Section 3(c) has been satisfied in numerous cases where intentional out of state conduct other than fraud alleged caused injury in Massachusetts." KPM's Br. at 24 <u>citing</u> <u>Doane v. Python Leads, LLC</u>, 1:24-CV-12947-JEK, 2025 WL 3485569, at \*2, \*4 (D. Mass. Dec. 4, 2025). In <u>Doane</u>, an out of state defendant sent unsolicited telemarking calls to Massachusetts residents in violation of state and federal law. Like the fraudulent misrepresentations in the cases cited by Defendants, these calls were intentionally sent *across state lines targeting Massachusetts residents*. The defendants in <u>Doane</u> and the cases cited by Defendants acted like a gunman firing across a state line, where intent follows the bullet. Under these limited circumstances, their out-of-state conduct is viewed as an *act* that occurs in Massachusetts. But those are *not* the facts of this case.

KPM argues that "a Chapter 93A violation also is sufficient to satisfy the tortious injury requirement." KPM's Br. at 25. But in each of the cases KPM cites the exercise of jurisdiction was based on *fraudulent misrepresentations* sent to a Massachusetts resident. <u>See</u> <u>LaValle v.</u>

7

Parrot-Ice Drink Prods. of Am., Inc., 193 F. Supp. 2d 296, 300 (D. Mass. 2002) (fraudulent misrepresentations in faxes and phone calls sent from Texas to a Massachusetts resident); The Scuderi Group, LLC v. LGD Technology, LLC, 575 F.Supp.2d 312, 320 (D. Mass. 2008) (fraudulent misrepresentations sent from Michigan to a Massachusetts resident with the intent that they be relied upon to his detriment); Captivate LLC v. Datalock Systems, Inc., 2019 WL 7707968, *1 (Mass. Super. Dec. 10, 2019) (fraudulent invoices sent from Florida to a Massachusetts resident).

Here, Defendants did not send anything into Massachusetts to injure KPM—*i.e.*, Defendants did not commit an "act or omission in this commonwealth" as required by Section 3(c).

## III. KPM Cannot Establish Personal Jurisdiction Over ITG By Arguing "Agency" or "Ratification"

KPM did not even try to pierce ITG's corporate veil. Instead, KPM now claims that ITG is subject to personal jurisdiction in Massachusetts because it "ratified" the conduct of its "agent," Blue Sun. KPM's Br. at 27-28. According to KPM, "ITG's repeated failure to terminate the unfair or deceptive conduct once it had learned about it is the exact sort of action that subjects ITG to jurisdiction in the forum state as adopting

its agents acts." Id. quoting Daynard, 290 F.3d at 55. This argument, however, fails for several reasons.

First, Blue Sun did not commit an "act or omission" in Massachusetts. Thus, even if Blue Sun's conduct could be imputed to ITG, it would not satisfy Section 3(c) of the long arm statute.

Second, a subsidiary is not the agent of the parent company, and the parent is generally not liable for its acts. See United States v. Bestfoods, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries."). As such, Blue Sun's actions do not confer jurisdiction over ITG. Id.

Third, KPM waived any agency theory by failing to raise it with the district court. See Keane v. Expeditors Int'l of Washington, Inc., 138 F.4th 613, 617-18 (1st Cir. 2025) ("But [Plaintiff]'s complaint contains insufficient allegations or even a request to pierce the corporate veil, nor does it allege sufficient facts on which [parent] can be held liable for [subsidiary's] actions.").

*Fourth*, ITG's alleged "ratification" (by not firing Irvin Lucas after receiving the complaint) cannot be the basis for jurisdiction because it happened *after* suit was filed. RA 1472; RA 1880-82; RA 1912-13. Jurisdiction is gauged at the time the cause of action accrues. Harlow v. Children's Hospital, 432 F.3d 50, 61 (1st Cir. 2005) ("in analyzing specific jurisdiction, contacts must generally be limited to those before and surrounding the accrual of the cause of action."). Because jurisdiction cannot be based on by conduct occurring after the suit is filed, KPM's argument fails as a matter of law.

*Finally*, the cases cited by KPM are highly distinguishable and do not support its position. In Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., a law firm engaged a legal expert in Massachusetts on behalf of itself and another out-of-state firm. 290 F.3d 42, 53-54 (2002). The court held that through its subsequent dealings with the expert, the out-of-state firm ratified the agreement and was subject to suit in Massachusetts. Id. at 55-56.

Similarly, in Nandjou v. Marriott Int'l, Inc., a hotel chain sent flyers advertising its hotel in Ontario to plaintiff's home in Massachusetts. 985 F.3d 135, 139 (1st Cir. 2021). In response to that

advertisement, Plaintiff stayed at the hotel, and her husband and child drowned in the swimming pool. This Court found that jurisdiction over the hotel chain was proper because the hotel chain was conducting business in Massachusetts. Id. at 150. In short, neither Daynard nor Nandjou support KPM's argument.

## IV.   KPM Fares No Better Under the Due Process Clause

KPM failed to cite any record or case law showing that the *prima facie* evidence establishes jurisdiction under the Due Process analysis. As such, it has waived any argument on that issue. Hewes v. Pangburn, 162 F.4th 177, 202 n.12 (1st Cir. 2025) ("Ordinarily, issues adverted to in perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.")(internal quotation omitted). Instead of defending jurisdiction based on the *prima facie* evidence, KPM stretches the trial record in a futile attempt to connect Defendants' conduct to Massachusetts. But even the trial evidence (which is outside of this Court's review) does not support jurisdiction.

### A.   *KPM Has Not Identified a Single Blue Sun or ITG Contact with Massachusetts*

Even if this Court accepted KPM invitation to review the trial evidence and make evidentiary findings on appeal (which it should not

do) there still is no jurisdiction over the Defendants. <u>Boit</u>, 967 F.2d at 676 (noting that is for the district court to weigh evidence and make findings of fact following a jurisdictional evidentiary hearing).

Most of the items in the list of conduct that KPM argues supports jurisdiction are alleged contacts by KPM, *not the Defendants*, and are unrelated to the litigation. Therefore, they are irrelevant for purposes of specific jurisdiction. <u>Walden v. Fiore</u>, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). For instance, KPM points to the following:

1) the individual defendants worked for a business headquartered in Massachusetts;

2) A Massachusetts manager reviewed Gajewski's performance;

3) KPM's employee handbook was published in Massachusetts;

4) KPM manufactures NIR machines in Massachusetts;

5) KPM distributes UCal software in Massachusetts and the license agreement has a Massachusetts jurisdiction selection clause;

6) One of KPM's customer contracts has a Massachusetts forum selection clause; and

7) Gajewski's computer was connected to KPM's network in Massachusetts and KPM used that connection to track his activity.

KPM's Br. at 10-13.

None of this was part of the *prima facie* evidence before the court. Regardless, this "evidence" concerns KPM's (*not* Defendants) contacts with Massachusetts and is not related to the litigation. As such, it does *not* establish jurisdiction over Defendants. <u>Walden</u>, 571 U.S. at 289 (reversible error to base jurisdiction on defendant's awareness of plaintiff's "strong forum connections" and knowledge that the plaintiff would "suffer foreseeable harm" in the forum).

KPM also focuses on contracts that do not concern its claims. KPM's tortious interference claim only concerned the Individual Defendants' employment agreements. RA 46-260; RA 2132-2189; RA 2265-2274. KPM twists the trial record to suggest that its claims also relate to its contracts with several customers (R&R Machine Works, Junbunzlauer, and Mariani Packing). But the trial exhibits

cited and testimony at trial demonstrate that none of these customers were in Massachusetts. KPM's Br. at 13-14.

None of the conduct that relates to KPM's claims occurred in Massachusetts. *First,* KPM claims that the calibration datasets were stolen. But the *prima facie* evidence was that Gajewski used calibration data that was saved locally on his computer in Illinois. Specifically, the *prima facie* evidence included a report written by Eric Olson, the KPM Vice President that investigated Gajewski's conduct and analyzed backups of his laptop.  RA 249-58. The report (which was attached to the Complaint) concluded that the calibration "files [were] located on local drive of Rob G computer only," and "not in our Shared Application Database." RA 258.[3] In sum, KPM's claim that *similar* datasets existed on KPM's computers/servers in Massachusetts is irrelevant because Blue Sun did *not* take it from those computers/servers.

*Second*, KPM claims that Blue Sun stole KPM's preventative maintenance checklists. But there was no *prima facie* evidence that this occurred in Massachusetts. Instead, the evidence showed that the

---

[3] Olson testified at trial that there was no evidence that Gajewski used the calibration data from KPM's computers/servers to generate the application notes. RA 1247.

checklists were stored locally on Gajewski's computer in Illinois.
RA 1065-66.  The trial exhibits that KPM cites (RA 3555-61) merely
show that Gajewski (from Illinois) sent former KPM customers (outside
Massachusetts) Blue Sun's version of the checklist using his Blue Sun
email address.

*Third*, KPM argues that Gajewski used a KPM database to update
customer calibrations. However, the trial evidence cited by KPM
(RA 1288-89; RA 1037; RA 1050; RA 1154) establishes that Gajewski
updated customer calibrations with data that he received directly from
the customers (either while on site or by email)—outside of
Massachusetts. RA 1288-89; RA 1825-26; RA 3695.

*Fourth*, KPM claims that Gajewski copied files from his computer
in Illinois to external hard drives and a thumb drive. That conduct has
no connection to the Massachusetts forum.

*Finally*, KPM claims that the individual defendants forwarded
KPM emails to Blue Sun and lied to customers by email. However, all
the emails were sent and received outside Massachusetts. KPM does

not contend (nor could it) that its email server was housed in

Massachusetts.[4]

## B.     *KPM's Relatedness and Purposeful Availment Arguments Fail as a Matter of Law*

KPM concedes that to satisfy the relatedness Due Process prong it

must establish that the trade secret misappropriation occurred in

Massachusetts. KPM's Br. at 30. Here, (unlike the cases cited by KPM

and as described above) it is undisputed that the trade secret

misappropriation occurred outside Massachusetts.[5]

KPM's brief ignores the Defendant's lead case—the Supreme

Court's decision in Walden v. Fiore, 571 U.S. 277, 284 (2014). Walden

holds that: (1) the location of the theft (cash in that case) determines

the relatedness prong; and (2) knowledge that a plaintiff may be

---

[4] KPM used a cloud-based Microsoft Outlook email system, but there is no evidence on this point in the record.

[5] Contrast S & D Trading Acad., LLC v. AAFIS, Inc., 494 F. Supp. 2d 558, 567 (S.D.Tex.2007) (trade secrets accessed in forum and used outside the forum in China); M/A-COM Tech. Sols., Inc. v. Litrinium, Inc., No. SACV 19-220 JVS (JDEX), 2019 WL 6655274, at *6 (C.D. Cal. Sept. 23, 2019) (French citizen traveled to subject forum to facilitate the theft of trade secrets). KPM also cites Custom Conveyor Corp. v. Hyde, 237 F. Supp. 3d 895, 901 (D. Minn. 2017). That case involved jurisdiction over a former employee that stole trade secrets from his employer—not jurisdiction over the company that received the stolen trade secrets. As such, it is inapposite.

harmed in a forum is *never* alone sufficient to establish jurisdiction. Id.
KPM's failure to address this controlling precedent speak volumes.

KPM also fails to reconcile this Court's decisions in Astro-Med and
Vapotherm, which address jurisdiction in claims for tortious
interference with employee contracts. As demonstrated in Defendants'
lead brief, those cases turned on unique facts that are not present here.
For example, in Astro-Med the hiring employer was aware that the
departing employee had an employment agreement with exclusive
jurisdiction in the forum. Here, the employment contracts provided for
jurisdiction outside the forum (in Connecticut). KPM's claim that the
jurisdictional consent was not *exclusive* to Connecticut misses the point.
Nothing in the employment agreements would have signaled to Blue
Sun or ITG, had they reviewed them (which there is no evidence of like
in Astro-Med), that they could have been sued in Massachusetts.

Similarly, KPM seeks to distinguish Vapotherm because it
concerned jurisdiction over a departing employee, not the hiring
employer. KPM's Br. at 34. Vapotherm holds that jurisdiction turns on
where the tortious interference occurred—not where the harm to the

former employer occurred or the fact that the employer was located in the forum. This principle is the same regardless of the defendant.

## V.    Defendants' "Unfair and Deceptive" Conduct Did *Not* Occur Primarily and Substantially in Massachusetts

In their lead brief, Defendants demonstrated that the "center of gravity" of the unfair and deceptive conduct is outside of Massachusetts. Here, the only connection to Massachusetts is that the Plaintiff resides in the Commonwealth—which, as a matter of law, is not enough to satisfy Chapter 93A. See Fishman Transducers, Inc. v. Paul, 684 F.3d 187, 197 (1st Cir. 2012); Neural Magic, Inc. v. Meta Platforms, Inc., 659 F. Supp. 3d 138, 183 (D. Mass. 2023).

In response, KPM cites a three-prong standard used to determine the "center of gravity" in Chapter 93A claims concerning deceptive statements that travel across state lines. See KPM's Br. at 39 citing Roche v. Royal Bank of Canada, 109 F.3d 820, 829 (1st Cir. 1997) ("The Clinton Hospital court distilled the approach down to three basic factors: (1) where defendant committed the *deception*; (2) where plaintiff was *deceived* and acted upon the *deception*; and (3) the situs of plaintiff's losses due to the *deception*.") (emphasis added). That analysis,

however, only applies to a particular claim (*e.g.*, fraud) and facts (*e.g.*, statement sent across state lines) that are not present here:

> the <u>Kuwaiti Danish</u> court certainly did not hold or imply that the factors identified by the district court (derived from our <u>Roche</u> decision) are irrelevant to the Chapter 93A calculus. Nor did the court suggest that its *prior decisions regarding how particular fact patterns* are to be interpreted for purposes of Chapter 93A's situs requirement—for example, *situations in which a misrepresentation is made in Massachusetts to a third party in another state who relies upon it there,* <u>see</u> <u>Bushkin</u>, 473 N.E.2d at 672—have been overruled or superseded.

<u>Uncle Henry's Inc. v. Plaut Construction Co.</u>, 399 F.3d 33, 44-45 (1st Cir. 2005) (emphasis added).

Here, the "center of gravity" is where the theft and interference occurred—which is *outside of Massachusetts*.[6] The supposed "Massachusetts" connections cited by Plaintiff do *not* concern Defendants' offending conduct. For example, the fact that Plaintiff's computers/servers are in Massachusetts is irrelevant because there is no evidence that Defendants took the information from those servers.

---

[6] There is no evidence or finding supporting KPM's claim that Defendants tortiously interfered with Massachusetts contracts. KPM's Br. at 37. Rather, KPM's claim was that Defendants interfered with its employee contracts, which contained Connecticut law and forum provisions. RA 46-260; RA 2132-2189; RA 2265-2274.

To the contrary, KPM *admitted* at trial that the files given to Blue Sun came from the hard drive on Rob Gajewski's laptop. RA 1153-54; RA 1156-57; RA 1246-48; RA 1625. Because the offending conduct did not occur primarily and substantially in Massachusetts, the Court should vacate the Chapter 93A award.

## VI.   MUTSA Supersedes KPM's Chapter 93A Claim Because It Is Based on the Theft of Trade Secrets

In their lead brief, Defendants established that MUTSA supersedes KPM's Chapter 93A claim because it is a claim for civil remedies based on theft of trade secrets. See G. L. c. 93 §42F(a) (MUTSA "shall supersede any conflicting laws of the commonwealth providing civil remedies for the misappropriation of a trade secret.").

Rather than address the plain language of the statute, KPM argues that "Defendants cite no case interpreting this language to render 93A inapplicable to trade secret cases." KPM's Br. at 41. To the contrary, even the cases cited by KPM hold that MUTSA supersedes Chapter 93A claims based on theft of trade secrets—but not claims based on theft of confidential information that does *not* qualify as a trade secret. See Neural Magic, Inc. v. Facebook, Inc., 1:20-CV-10444-DJC, 2020 WL 13538617, at *3 (D. Mass. Oct. 29, 2020) (MUTSA does

not supersede 93A claims concerning theft of confidential information that is not a trade secret); <u>Zemvar Inc. d/b/a/ Grip Mobility Co. v. Ubert Technologies, Inc.</u>, No. 2484CV01525-BLS, S2, 2025 WL 354890, at *11 (Mass. Super. Jan. 2025) (holding that MUTSA supersedes claims based on theft of trade secrets and "finding preemption would be premature at the motion to dismiss stage of a proceeding where 'it has yet to be determined whether the information at issue constitutes a trade secret.'").

Here, there can be no dispute that KPM's Chapter 93A claim is based on the theft of trade secrets—as opposed to mere confidential information. The jury found that the information at issue (UCal Software, Calibration Datasets, and Customer Information) *were all* trade secrets. Add. 72. The jury awarded $1.5 million for Blue Sun's theft of those trade secrets. Add. 74. The jury also awarded $1.5 million for Blue Sun's tortious interference. Add. 77. KPM conceded that this award duplicated the trade secret award. Add. 92-93. In doing so, it conceded that the tortious interference claim was based on theft of

trade secrets.[7] <u>Id.</u> Indeed, the tortious interference claim (Count VII of the Complaint) alleged that Blue Sun and ITG interfered with Individual Defendants agreements "not to use or disclose Plaintiff's trade secrets." RA 82 at ¶¶ 120-122. Leaving no doubt, KPM hammered this point to the jury and the court at trial:

> In terms of tortious interference with contractual relations, whether the two companies, Blue and ITG, encouraged and facilitated the individuals to breach the contracts that they had with KPM, KPM suggests that the answer to both companies is yes.

RA 2149 (KPM's Closing Argument).[8]

> [Mr. Gutkowski]: … I don't think there is a question between the parties that the claim only goes to whether or not the two entity defendants interfered with the contracts of the individual defendants.
>                                    …
> [Mr. Gutkowski]: Now, what is pled is the interference with the employee relationship.

RA 2266-2268 (Jury Question); <u>see also</u> RA 510 (KPM's Trial Brief).

---

[7] Similarly, KPM and the district court conceded that the trade secret award against the individual defendants (Add. 74) duplicated the breach of confidentiality agreement award. Add. 76-77. As such, they conceded that the information disclosed by the individual defendants was trade secrets, as opposed to mere confidential information. Add. 92-93.

[8] Defendants argued this point as well: "Essentially, what KPM is asking you to decide is whether or not ITG interfered with the employment contracts that the individual defendants had with KPM." RA 2178 (Defendants' Closing Argument).

In short, there is no question that the tortious interference claim involved the theft of trade secrets.

The jury was *not* asked to award damages for the Chapter 93A claim. Add. 78; RA 2242 (instructing jury "The next claim is unfair and deceptive trade practices under 93A. You're not awarding damages. You're not even to consider damages. This is just a determination of whether or not you believe this evidence has been established."). Instead, the district court doubled the trade secret and tortious interference awards under Chapter 93A. Add. 124. As such, it is indisputable that the Chapter 93A award is a civil remedy based on the theft of trade secrets.

As described in Defendants' lead brief, Chapter 93A conflicts with MUTSA and, therefore, is superseded. KPM's Br. at 51-54. Specifically, the laws conflict with regards to: (1) the quantum of proof for an award of attorney's fees and exemplary damages; and (2) the amount of exemplary damages.

KPM does not address this conflict between the laws. Instead, it argues that a "conflict" only exists if it is "impossible to comply with Chapter 93A and MUTSA simultaneously." KPM's Br. at 41. That is not

true. Conflicts also exist where one law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of the other law. See, e.g., English v. General Electric Company, 496 U.S. 72, 80 (1990).   To that end, MUTSA is intended to provide comprehensive regulation of trade secrets and occupies the field.  See Cabot Corp. v. Baddour, 394 Mass. 720, 725 (1985) (holding Uniform Securities Act supercedes Chapter 93A because Chapter 93A allows for multiple damages based on willful statutory violations, unlike the Securities Act).[9]

The stated legislative purpose of MUTSA is to "make uniform the law with respect [*sic*] trade secrets." G. L. c. 93 §42G. Allowing plaintiffs to bypass the requirements and limitations of MUTSA by casting their claim under Chapter 93A would obliterate that purpose and render MUTSA meaningless. Indeed, this Court's decisions prior to MUTSA hold that trade secret misappropriation also violates Chapter 93A. Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) ("misappropriation of trade secrets alone can

---

[9] The Massachusetts legislature later amended Chapter 93A's definition of "trade" and "commerce" to include the sale of securities.  St. 1987, c. 664, § 3.

constitute a violation of Chapter 93A."). If that is true, then the requirements and limitations in MUTSA are meaningless because Chapter 93A offers broader relief with a lesser showing.

Even the cases cited by KPM recognize this conflict and state that a Chapter 93A claim based on the theft of trade secrets is superseded by MUTSA. See Neural Magic, 2020 WL 13538617, at *3; Zemvar, 2025 WL 354890, at *11. For these reasons, the Court should vacate the Chapter 93A award.

## VII. The Court Should Strike the Lower Court's Malice Finding

In their lead brief, Defendants demonstrated that the district court erred in finding malice because: (1) the evidence did not support such a finding (as previously found by the court); and (2) it was for the jury, not the court, to decide.

KPM ignored the first issue, thereby waiving any argument that the evidence supported a finding of malice.

KPM incorrectly claims that MUTSA reserves the malice issue for the court. To the contrary, MUTSA states that the court may award exemplary damages *if* there is a finding of malice. G. L. ch. 93 § 42(B) ("*If willful and malicious misappropriation exists*, the court may award

exemplary damages . . .") (emphasis added). MUTSA does *not* say that the court, as opposed to the jury, must make that finding. <u>Id.</u> Indeed, courts in this district routinely let juries decide whether misappropriation is "willful and malicious." <u>See</u> <u>Insulet Corp. v. EO Flow Co., Ltd.</u>, 779 F. Supp. 3d 124, 133 (D. Mass. 2025) (*jury* found "willful and malicious" misappropriation existed).

Here, the parties understood that the jury would decide whether misappropriation was willful and malicious. During the charging conference, however, the district court ruled that no reasonable juror could find malice based on the evidence. The court had no right to become the "unreasonable juror" and decide malice post-verdict. Doing so deprived Defendants of procedural due process and the right to a jury trial.

Unable to rebut this argument, KPM sheepishly claims that any error is harmless because the court did not award the damages under MUTSA.[10] Although the court awarded attorney's fees and double

---

[10] Defendants challenged this finding to ensure that KPM did not try to backstop the Chapter 93A award by claiming that the award *could have been* made under MUTSA given the court's malice finding. KPM, however, waived that argument by failing to make it.

damages under Chapter 93A—and not MUTSA—this error was *not* harmless because the malice finding carries consequences in the bankruptcy proceeding.

## VIII. The District Court's Erroneous "Head Start" Instruction

The head start doctrine is meant to present *a temporal limitation* on damages. BioPoint, Inc. v. Dickhaut, 110 F.4th 337, 359 (1st Cir. 2024) (Rikelman, J., Dissenting in part) ("Under Massachusetts law, for example, the head start 'rule' limits, rather than expands, the scope of damages."); Jet Spray Cooler, Inc. v. Crampton, 377 Mass. 159, 171 n.11 (1979) ("The application of a head start approach would limit damages to that period of time in which others in the trade are likely, through legitimate business procedures, to have become aware of these secrets.") (internal quotations omitted). To disgorge profits under the "head start" theory, there must be evidence of the head start period. Id.

Here, the only evidence cited by KPM is vague and conclusory lay testimony that Blue Sun had received a "head start." As a matter of law, this is not enough. See Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc., 895 F.3d 1304, 1318 (Fed. Cir. 2018) ("On

27

remand, any determination of sales-based monetary relief for trade
secret misappropriation requires evidence and a determination of the
time at which the trade secret became properly accessible to Intersil
and the duration of any head-start period."). Thus, the court's head
start instruction was erroneous and highly prejudicial.

Contrary to KPM's suggestion, this error was *not* harmless. It is
undisputed that most of the jury's unjust enrichment damages were for
the period *after* the Court entered the preliminary injunction. KPM
could only have received damages because of the improper head start
instruction.

## IX. The District Court Improperly Altered the Elements of a Tortious Interference Claim by Erroneously Instructing the Jury on Willful Blindness

In their lead brief, Defendants demonstrated that the district
court improperly altered the elements of a tortious interference claim by
erroneously instructing the jury on willful blindness. KPM responds
that "[a] willful blindness instruction to establish knowledge in torts is
appropriate under Massachusetts law." KPM's Br. at 51. To the
contrary, "willful blindness" is *only* used in *fraud cases* to prove
knowledge that a statement was *knowingly* false. See International

Floor Crafts, Inc. v. Dziemit, 420 Fed. App'x 6, 14-15 (1st Cir. 2011) ("At trial, the district court instructed the jury that it could infer Dziemit's knowledge from circumstantial evidence *or, as to the fraud claim only*, from evidence that showed willful blindness.")(emphasis added). As this Court explained, "[u]nder a willful blindness formulation, the defendant does not need to actually know that the statements she made were false if the falsity is 'susceptible of actual knowledge.'" Id.

KPM does not cite a single case—Massachusetts or otherwise— where the court applied "willful blindness" to a tortious interference claim. Instead, KPM cites an unpublished Fourth Circuit decision applying Maryland law that does not even discuss the concept of willful blindness. See Prudential Real Estate Affiliates, Inc. v. Long & Foster Real Estate, Inc., 208 F.3d 210 (Table), 2000 WL 248170 at *4-5 (4th Cir. 2000). In Prudential, the defendant admitted knowing about the contract at issue and that its potential deal with the third party would likely cause that party to breach it. Id. The Fourth Circuit held that this evidence was sufficient to survive summary judgment on the issue of knowledge. Id. That is a far cry from applying "willful blindness" to a tortious interference claim.

## <u>CONCLUSION</u>

KPM has not met its burden to establish personal jurisdiction under the Massachusetts long-arm statute or the Due Process clause. The *prima facie* record contains no evidence that Blue Sun or ITG committed any act in Massachusetts, and KPM's reliance on its own forum contacts, agency and ratification theories, and extraterritorial conduct cannot supply what the law requires. Nor does KPM's waiver argument withstand scrutiny—Defendants preserved their jurisdictional challenge under Rule 12(b)(2) with review confined to the *prima facie* standard.

The Court should therefore reverse the judgment and dismiss the claims against the Defendants for lack of personal jurisdiction. Furthermore, the Chapter 93A claim is superseded, and even if it were not, the claim is barred because the offending conduct did not primarily and substantially occur in Massachusetts. At minimum, the Court should vacate the judgment and remand for a new trial because the district court's erroneous "head start" and "willful blindness" instructions improperly broadened liability and damages, tainting the verdict.

Dated: February 27, 2026                Respectfully submitted,

/s/ *Christopher J. Hurst*
Christopher A. Duggan (18241)
Dana A. Zakarian (63652)
Patricia A. Hartnett (48631)
Christopher J. Hurst (1188843)
SMITH DUGGAN CORNELL
GOLLUB, LLP
55 Old Bedford Road, Suite 300
Lincoln, MA 01773
Tel: 617-228-4416
chris.duggan@smithduggan.com
dana.zakarian@smithduggan.com
churst@smithduggan.com
phartnett@smithduggan.com

Attorneys for Defendants-
Appellants BLUE SUN
SCIENTIFIC, LLC and THE
INNOVATIVE TECHNOLOGIES
GROUP & CO., LTD.

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

**Certification of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,864 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionately spaced typeface using Microsoft Word Version 16.66.1 in 14-point Century Schoolbook.

/s/ Christopher J. Hurst

Christopher J. Hurst (1188843)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27th day of February 2026, I

electronically filed the foregoing document with the United States Court

of Appeals for the First Circuit by using the CM/ECF system.  I certify

that the following parties or their counsel of record are registered as

ECF Filers and that they will be served by the CM/ECF system:

Scott R. Magee
Direct: 781-622-5930
Morse Barnes-Brown & Pendleton PC
Firm: 781/622-5930
480 Totten Pond Rd, 4th Floor
City Point
Waltham, MA 02451

Michael Kippins
Lawyers for Civil Rights
61 Batterymarch Street, 5th Floor
Boston, MA 02110

William L. Prickett
Sanzone & McCarthy, LLP
981 Worcester Street, Suite 1A
Wellesley, MA 02482

Dawn M. Mertineit
Direct: 617-946-4800
Fax: 617-790-5344
Dallin R. Wilson
Seyfarth Shaw LLP
2 Seaport Lane, Suite 1200
Boston, MA 02210-2028

Robert S. White
Direct: 508-753-7038
Fax: 508-756-1613
BourgeoisWhite LLP
1 W. Boylston Street, Suite 307
Worcester, MA 01605

*s/ Christopher J. Hurst*

Christopher J. Hurst (1188843)